United States District Court
Northern District of California

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RAFAEL DAVIS,<br><br>Defendant. | Case No.: CR-14-70065-MAG-3 (KAW)<br><br>DETENTION ORDER |

## I. BACKGROUND INFORMATION

Defendant Rafael Davis is charged by complaint with violations of Title 18 U.S.C. § 1951(a) and (2) (Conspiracy to Commit Robbery, Attempted Robbery Affecting Interstate Commerce, and Aiding and Abetting). On February 3, 2014, the United States moved for Defendant's detention pursuant to the Bail Reform Act, and asked for a hearing as permitted by 18 U.S.C. § 3142(f). Pretrial Services prepared a full bail study. On November 5, 2013, the court conducted a detention hearing. Defendant was present, in custody, and represented by Adam Panella. Assistant United States Attorney Brigid Martin appeared on behalf of the Government. For the reasons set forth below, the court orders that Defendant be detained.

## II. LEGAL ANALYSIS

The Bail Reform Act requires that in a pretrial posture, the government bears the burden of proving that a defendant poses a risk of flight and/or a danger to the community that cannot be mitigated through the imposition of conditions of release. If the government does not meet its burden, the court's duty is to fashion appropriate conditions that permit the defendant to remain out of custody during the preparation of his or her defense, while safeguarding against flight or danger to the community. Close cases should result in release: "[t]o give effect to the principle that doubts regarding the propriety of release be resolved in favor of the defendant, the court is to

rule against detention in close cases." *United States v. Chen*, 820 F. Supp. 1205, 1208 (N.D. Cal. 1992) (Walker, J.) (citing *United States v. Motamedi*, 767 F.2d 1403, 1405-06 (9th Cir. 1985)).

A person facing trial generally shall be released if some "condition, or combination of conditions . . . [can] reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c). In non-capital cases, pretrial release should be denied "[o]nly in rare circumstances." *Motamedi,* 767 F.2d at 1405; *see also United States v. Salerno*, 481 U.S. 739, 755 (1987) (upholding constitutionality of Bail Reform Act; "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception"). Bail hearings generally proceed by proffer, and the rules of evidence do not apply. 18 U.S.C. § 3142(f). At the hearing, the court determines whether any conditions in section 3142(c) will reasonably assure the defendant's appearance and the safety of the community or another person. *Id.* The Bail Reform Act "mandates release of a person facing trial under the least restrictive condition or combination of conditions that will reasonably assure the appearance of the person as required." *Motamedi*, 767 F.2d at 1405.

In evaluating whether pretrial release is appropriate, a court must consider (1) the nature and circumstances of the offense, (2) the weight of the evidence, (3) the history and characteristics of the person (including his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug and alcohol abuse, criminal history, or record concerning appearance at court proceedings), and (4) the nature and seriousness of the danger to any person or the community posed by the person's release. 18 U.S.C. § 3142(g); *Motamedi*, 767 F.2d at 1407.

**A. The Nature and Circumstances of the Offense and Weight of the Evidence**

Defendant is charged with violations of Title 18 U.S.C. § 1951(a) and (2) (Conspiracy to Commit Robbery, Attempted Robbery Affecting Interstate Commerce, and Aiding and Abetting).

On June 20, 2013, Oakland Police Officers were engaged in surveillance in the vicinity of 37th Street and Martin Luther King Way, on a matter unrelated to Defendant and his co-defendants. At about 10:15 a.m., an OPD officer saw a red 2001 Acura CL park along the south

side of the 600 block of 37th Street. Co-defendants Jaedon Evans (Evans) and Keegan Leecodi Cotton, Jr., (Cotton) got out of the Acura and walked West, looking around and talking on cellular telephones. They continued to loiter in the area for 10-20 minutes until a stretch limousine turned onto 37th Street. Cotton raised his arm as if he was flagging down the driver of the limousine. The driver pulled over, got out, and walked to the rear of the car to open the rear passenger door for Cotton. Cotton stepped up to the open door and leaned inside. At the same time, Evans came running up to the driver with what appeared to be a firearm in his right hand, which he pointed at the driver. The limousine driver and passenger ran away, and Cotton and Evans fled from the scene, on foot.

OPD officers saw that, at about the same time that Cotton and Evans attempted to rob the passenger in the limousine, the red Acura pulled away from the curb and began to move east on 37th Street and then turned south on Martin Luther King, Jr. Way. OPD police cars responded to the scene to apprehend Cotton, Evans and the red Acura. A short time later, OPD stopped the red Acura, and the driver was identified as Defendant Davis. Davis exited the vehicle with a cellular phone pressed to his head. Evans, who had been seen earlier fleeing from the scene of the robbery on foot, was a passenger in the Acura. OPD searched the car for weapons and, inside the Acura, recovered a Raven MP-25 .25 caliber semi-automatic pistol, and a black Airsoft BB gun.

Other OPD officers located Cotton on foot in the area and detained him. The limousine passenger identified Cotton was one of the two men who tried to rob her. She also reported that she had been lured out to Oakland from Colorado by a man who purported to want to buy a diamond from her. The victim had placed an ad to sell the diamond on Craigslist. The victim reported that the purported buyer bought her a plane ticket to come to Oakland and sent the limousine to the airport to pick her up. The victim stated that at the time of the attempted robbery, she believed she was on her way to meet the purported buyer to complete the sale of the diamond.

OPD arrested Cotton, Evans and Defendant. Cotton admitted to participating in the attempted robbery with Evans and Defendant. When OPD stopped him in his Acura, Defendant told OPD that he had no idea what was going on and had just picked up his friend Evans right before the police pulled him over. Based on OPD's surveillance of the red Acura before and

DETENTION ORDER
CR-14-70065-MAG-3 (KAW)                        3

during the robbery, it is alleged that Davis was not being truthful. The phone Davis had in his hand at the time of his arrest contained photographs of a pistol, assault rifle, bundled and banded U.S. currency, U.S. currency displayed on a bed and a diamond ring. Some of those photos were presented to the court and defense counsel at the detention hearing. Also found on Defendant's phone and presented at the hearing were screen shots of photos posted on Instagram of Defendant counting out large amounts of U.S. currency on top of a computer keyboard and a wallet full of U.S. currency. In the photo of Defendant counting currency, the person having the Instagram name "yungstunna" posted "wanna count up like this? You can the money is easy! Aye this business is a gold mine! Email me _yungstunna818@gmail.com."

The nature and circumstances of the instant offense involve a relatively complex conspiracy between Defendant and others to lure a victim who posted jewelry for sale on Craigslist to Oakland for the purposes of robbing her at gunpoint – a violent crime. Defendant's involvement in the crime was observed by officers and confirmed by one of the co-defendants. Therefore, while the weight of the evidence is the least important factor, the nature and circumstances of the offense and the weight of the evidence weigh in favor of detention.

**B. The History and Characteristics of the Defendant and the Nature and Seriousness of the Danger to Any Person or the Community**

Defendant is 20 years old and was residing with his mother in Benicia, California at the time of his arrest. Defendant has daily contact with his mother and twice weekly contact with his father. He graduated from Benicia High School in 2012. Defendant reported that he started consuming alcohol at age 16 and consumes alcohol approximately 3 times per month, but not to the point of intoxication. He began using marijuana at age 17 and uses it 2 to 3 times per week. He stated that he has a "cannabis card" due to occasional trouble with his appetite and with sleep. Additionally, Defendant indicated that he started using Xanax (without a legal prescription) two weeks before the arrest for the instant offense to help him sleep. His mother was not aware of his drug and alcohol use. Defendant has not been diagnosed with any mental illness and has never received any mental health treatment. He lacks current employment and has very little employment history.

DETENTION ORDER
CR-14-70065-MAG-3 (KAW)                                              4

Defendant has a short but violent criminal history that started when he was a juvenile in 2010. He was convicted of threatening a crime with intent to terrorize, a felony, and sentenced to 123 days in Juvenile Hall and a firearm restriction.  In that same case, he was also convicted of force/assault with a deadly weapon – not a firearm – likely to result in great bodily injury, a felony. According to the police report for that incident, Defendant and his current co-defendant, Evans, were engaged in a verbal altercation with an individual who claimed they had previously attempted to burglarize his home. Defendant and Evans left and returned a few minutes later with a shotgun, which Defendant pointed at the victim and stated, "This will (or "I will") blow your head off."

Defendant proposed his mother and father, as sureties. Defendant's mother, Twanisha Watkins, has stable employment and a minimal criminal history involving an arrest from 1992 for obstructing/resisting a public officer and fraud to obtain aid and perjury for which her conviction for Grand Theft was later set aside. Defendant's father, Rafael Davis, Sr., however, has such a long criminal history involving drugs guns and violence, that it will not be summarized here. Suffice it to say, Mr. Davis has, among other arrests and charges, at least four felonies and multiple probation/parole violations. As such, Defendant's father is not a suitable surety.

While his mother might be suitable as a surety to mitigate the risk of flight, as provided below, she is not suitable to mitigate the danger to the community.  Like Pretrial Services, the court is concerned with the violent nature of the instant offense and the fact that it allegedly involved firearms. Further, the evidence that Defendant was photographed with large amounts of cash, a firearm, and a diamond ring, and that these images were posted on the Internet, tends to show that Defendant is proud of his alleged crime and encourages others to join him. This is particularly concerning in light of Defendant's prior conviction which involved pointing a firearm at, and threatening to kill, an individual with Evans, who is also a co-defendant in this case. It appears that Defendant has not learned anything from his prior conviction or the 123 days he spent in Juvenile Hall. To the contrary, he is now alleged to have committed an even more sophisticated offense involving violence. As such, there is no combination of release conditions to mitigate Defendant's risk of danger to the community.

DETENTION ORDER
CR-14-70065-MAG-3 (KAW)                                    5

**C. Risk of Nonappearance**

Factors that indicate Defendant poses a risk of nonappearance include his lack of current employment or stable employment history, his apparent access to large amount of cash, use of marijuana and missing passport. Mitigating his risk of non-appearance, as mentioned above, is his tie to his mother who is willing to be a surety and third party custodian, his limited foreign travel and apparent lack of mental illness. As such, the court believes that there exists a combination of conditions that would mitigate Defendant's risk of nonappearance. Given the risk of danger to the community discussed above, however, this factor, alone, is insufficient.

### III.  CONCLUSION

In light of the nature of the instant offense and the weight of the evidence, the court finds that Defendant presents a danger to the community, and that there is no condition or combination of conditions that will reasonably assure the safety of any other person or the community.

For the reasons set forth above, Defendant shall remain committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.  Defendant shall be afforded reasonable opportunity for private consultation with counsel.  On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which Defendant is confined shall deliver Defendant to a United States marshal for the purpose of an appearance in connection with a court proceeding.

IT IS SO ORDERED.

DATED: February 19, 2014

KANDIS A. WESTMORE
United States Magistrate Judge

DETENTION ORDER
CR-14-70065-MAG-3 (KAW)                            6